FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

JUN 27 2006

DAVID J. MALAND, CLERK

DEPUTY _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| DONNA JONES NOELLER, | § | Civil Action No. _____ |
| Plaintiff, | § | |
| | § | 1:06CV0350 |
| vs. | § | Honorable _____ |
| | § | Judge Heartfield |
| AMERICAN MEDIA, INC. | § | |
| d/b/a GLOBE, and | § | |
| ALAN SMITH, | § | Jury Trial Demanded |
| Defendants. | § | Injunctive Relief Requested |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, DONNA JONES NOELLER, Plaintiff, complaining of Defendants AMERICAN MEDIA, INC. d/b/a GLOBE ("GLOBE") and ALAN SMITH, (collectively referred to as "Defendants"), and for cause of action would respectfully show this Honorable Court as follows:

### I. Parties

1.  Plaintiff, **DONNA JONES NOELLER** is a resident of Silsbee, Hardin County, Texas.

2.  Defendant, **AMERICAN MEDIA, INC. d/b/a GLOBE**, is a Delaware corporation doing business in the State of Texas and in the Eastern District of Texas. It has no registered agent for service in the State of Texas. Service may be made by serving its registered agent: CT Corporation System, 1200 South Pine Island Road, Plantation Florida, 33324.

1

3. Defendant, **ALAN SMITH**, is a natural person, a Florida resident, and a citizen of Florida. Service may be made by serving him at his place of business: American Media, Inc., 1000 American Media Way, Boca Raton, Florida, 33464.

## II. Jurisdiction and Venue

4. Jurisdiction is proper in the Eastern District of Texas pursuant to Title 18 U.S.C. Section 1332 since there is complete diversity amongst the parties as the Plaintiff is a citizen of one State, Texas, and the Defendants are all citizens of states other than Texas. All Defendants have committed acts or omissions within the Eastern District of Texas including, *inter alia*, the acts described herein and publications distributed throughout the Eastern District of Texas (and Texas as a whole) relating specifically to the Plaintiff and the instant cause of action. This Court's exercise of jurisdiction over these Defendants does not offend the traditional notions of fair play and substantial justice because these Defendants have purposefully availed themselves of the benefits of the State of Texas or conducted activities in or directed to the State of Texas such that they cannot feign surprise of the exercise of jurisdiction by this Court. This Court may exercise jurisdiction over these Defendants under both "specific" jurisdiction and "general" jurisdiction since the acts complained of herein were committed or directed to the State of Texas and the Defendants' activities within the State of Texas are systematic and continuous.

5. Venue is proper in the Eastern District of Texas pursuant to Title 28 U.S.C. Section 1391(a)(2) in that "a substantial part of the events or omissions" on which the claim is based occurred in the Eastern District of Texas. As to Defendant Globe, a Delaware corporation, it is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Title 28 U.S.C. Section 1391(c). Since

Globe is subject to personal jurisdiction in the Eastern District of Texas, it is deemed to reside in the Eastern District of Texas further permitting venue here under Title 28 U.S.C. Section 1391(a)(1).

### III. Facts

6. Plaintiff Donna Jones Noeller is a private widower living in Silsbee, Hardin County Texas (situated within the Eastern District of Texas). She has no cell phone, no Internet access, and virtually no contact with those outside of Texas including the press. One of her daughters (she has three), Chloe Jones, was alleged in media to participate in the pornography industry. Chloe Jones ultimately met Charlie Sheen, the well-known actor. Chloe Jones began a romantic affair with Mr. Sheen who was, at the time, married. Shortly after Mr. Sheen and Plaintiff's daughter began their affair, Plaintiff's daughter went public with the affair. Shortly thereafter in March of 2005, Charlie Sheen's wife—Denise Richards—filed for divorce citing irreconcilable differences. Around that time Plaintiff's daughter, Chloe Jones, was found dead in her Houston home. The coroner ruled the death as an accidental overdose of prescription drugs.

7. In light of Chloe's choice of lifestyle, Plaintiff chose to remain private— rarely talking to anyone outside her immediate family about her daughter's lifestyle or relations with Charlie Sheen. Despite offers to move to California, Plaintiff preferred the peace, quite, and privacy of her farm in Silsbee. Recently, Plaintiff received a phone call from her daughters, Chloe's sisters, surprised by an "interview" allegedly given by the Plaintiff to the Defendants.

8. Attached hereto and fully incorporated herein by reference is the front-page announcement of the article "Charlie Sheen Blamed for Porn Star's Death...by her mother." *See "Charlie Sheen Blamed for Porn Star's Death...by her mother,"* attached as *Exhibit 1*. This particular article appears in the May 15, 2006 "Globe" publication, often dubbed a "tabloid" easily accessible at any supermarket check-out line. According to the publication, Globe is "published weekly by American Media, Inc." Indeed, the attached copy was purchased in Beaumont, Jefferson County, Texas in the Eastern District of Texas. Many, many copies of the attached article were disseminated by the Defendants throughout the Eastern District of Texas on or about May 15, 2006; and, presumably, the same publication was disseminated throughout the United States and the world.

9. In the article the Defendants claim to conduct an "interview" of the Plaintiff about her daughter, Chloe Jones, and her death. Quite simply, this "interview" never took place. That is, it is a complete fabrication by the Defendants. Notably, the Defendants claim to have conducted "an exclusive interview" of the Plaintiff. No such interview ever took place. Worse, in this article the Defendants falsely assign numerous disparaging and damaging remarks to the Plaintiff. The following quotes were inappropriately assigned to the Plaintiff:

a) "I've seen a lawyer about filing a wrongful death suit against Mr. Sheen. I think he didn't slip her the pills—but he drove her to it with death threats."

b) "He even said he'd get someone to slip poison in her favorite drink—Coca-Cola. Toward the end, she was so paranoid Charlie was out to get her, she wouldn't sip the soda"

4

c) "She'd call me 10 times a day telling me of her fears. She was terrified to death of the guy. She said Charlie was calling her saying, 'Bitch, you better keep your mouth shut!' He yelled, 'You're a liar.'"

d) "I talked to her for four hours 'til 2 a.m. the night she died. She was found dead at 5:30 in the morning."

e) "She told me that Charlie was still threatening her, afraid she'd go public again and tell more about their relationship."

f) "To me, her death was suspicious. I have called homicide detectives in Houston, but I don't think they are taking mer seriously."

g) "But I think Denise should. If I were her, I'd run a mile from this guy."

h) "I think he's menacing, frightening and dangerous."

i) "But instead she [Chloe] was living in fear."

j) "It'll [a book she allegedly is writing] will blow the lid off Charlie Sheen's part in it."

10. Not only were these statements not made by the Plaintiff; they are false and/or misleading. The truth is the Plaintiff does not think that Charlie Sheen killed or caused to be killed her daughter, Chloe Jones; and neither Plaintiff nor Chloe Jones thought that Charlie Sheen was "out to get her." These statements constitute statutory libel because they tended to injure the plaintiff's reputation and expose the Plaintiff to public hatred, contempt, ridicule, and financial injury, and impeached her honesty and integrity.

11. The Defendants published the defamatory statements with knowledge that they were false or with substantial grounds for knowing that they might be false and with reckless disregard to whether they were true or false.

12. Prior to the publication, the Plaintiff resided in Silsbee, Hardin Conty, Texas and enjoyed a reputation for privacy, sobriety, and honesty.

### IV. Defendants' Liability

*A.  Libel and Slander*

13. The aforementioned paragraphs one (1) through twelve (12) and above statements are incorporated herein by reference.

14. Plaintiff, Donna Jones Noeller, is a private-figure plaintiff; she is not a public official or public-figure plaintiff.

15. The Defendants published a statement of fact referring to the Plaintiff; the statement was defamatory; the statement was false. With regard to the truth of the statement, the Defendants were acting with actual malice, negligent, or liable without regard to fault and the Plaintiff suffered pecuniary injury.

16. As a direct and proximate result of the Defendants' publication of the defamatory statement, the Plaintiff's reputation has been severely injured. The allegations contained in the defamatory statements have caused the Plaintiff to suffer extreme mental anguish, public humiliation, and embarrassment. For example, Plaintiff now lives in fear that Charlie Sheen or his attorneys may institute their own defamation claim against her, or otherwise act against the Defendant's published statements ascribed to the Plaintiff. The Plaintiff seeks damages for these injuries in an amount within the jurisdiction of this Court.

17. Furthermore, the Plaintiff is entitled to exemplary damages from the Defendants because they acted with the malice required to support an award or exemplary damages. Defendants acted with a specific intent to cause injury to the Plaintiff or conscious indifference to the rights, safety, or welfare of the Plaintiff with actual, subjective awareness that their conduct involved an extreme degree of risk of harm to the Plaintiff. In particular, this "interview" never even occurred and the statements ascribed to the Plaintiff make accusations against Charlie Sheen that would encourage him to take legal or other action against the Plaintiff.

18. Plaintiff is also entitled to exemplary damages from Defendant Globe because Defendant Alan Smith was a vice principal or employed in a managerial capacity and, in doing the acts described in this petition, was acting within the course and scope of his employment. Plaintiff is also entitled to seek exemplary damages from Defendant Globe because it ratified and approved the conduct of Defendant Alan Smith.

19. The above-mentioned statements also constitute libel per se, statutory libel, slander, slander per se, and slander per quod.

B. *Intentional Infliction of Emotional Distress*

20. The aforementioned paragraphs one (1) through nineteen (19) and above statements are incorporated herein by reference.

21. The Defendants published and ascribed the foregoing statements when they knew that such behavior would subject the Plaintiff to severe emotional distress because Plaintiff, a private individual, would never have threatened Charlie Sheen, who has unlimited access to attorneys and public relations people of publicly "responding" to these false statements wrongly ascribed to the Plaintiff.

7

22. The Defendants' conduct proximately caused Plaintiff damage in that it caused Plaintiff to suffer severe emotional distress. In addition, Plaintiff continues to suffer severe mental pain and anguish, extreme anxiety, and nervousness caused by the false ascription of these public statements to Plaintiff.

## V. Damages

23. WHEREFORE, Plaintiff requests that Defendants be cited to appear and answer and that on final trial, plaintiff have the following:

1. Injunctive relief publicly retracting the statements.

2. Pecuniary and nonpecuniary damages as outlined above.

3. An award of exemplary damages against Defendants in a sum determined by the trier of fact.

4. Prejudgment interest.

5. Interest after judgment at the legal rate until paid.

6. Costs of court.

7. Attorney's fees in a reasonable amount, together with conditional awards in the event of appeal.

8. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

Provost & Umphrey Law Firm
P.O. Box 4905
Beaumont, Texas 77704-4905
(409)835-6000 phone
(409)838-8888 fax

*/s/ Mark Sparks*
Mark Sparks
Texas State Bar No. 24000273

Attorneys for the Plaintiff,
Donna Jones Noeller

## Jury Demand

The Plaintiff respectfully demands a trial by jury and hereby tenders her jury fee.

*/s/ Mark Sparks*
Mark Sparks

Exhibit "1"



# ESTRANGED WIFE DENISE FEARED...
# Charlie Sheen mixed up in DEATH OF PORN STAR!

DID Charlie Sheen have something to do with the death of a porn star who blew the whistle on his extramarital sex-capades?

His estranged wife Denise Richards feared he did.

And she confronted him during an angry clash in their bitter divorce and custody battle when, she claims, Sheen threatened to kill her and her parents.

"I brought up an old prostitute-porn star who he saw by the name of Chloe Jones," says Richards. "I saw on the news that she had died from undetermined causes. When I asked him if he had anything to do with her death, he said he had 'no comment.' He repeated 'no comment' when I asked him again.

"This scared me.

"He then threatened me again that if 'I do not agree to his request for joint custody, that I would never make it to court' because I would be 'f...ing dead!'"

Sheen, 40, and Richards, 35, wed in June 2002 and have two daughters – Sam, 2, and Lola, 11 months. When the actress filed for divorce citing irreconcilable differences on March 2, 2005, she was pregnant.

"I was scared," says Richards, "because I believe he has the ability to carry out his threats and do me harm."

And Chloe's mom, Donna, agrees.

In an exclusive interview, she claims the Two and a Half Men star is to blame for her daughter's death at age 29 last June!

Chloe went public about her relationship with Sheen in early April, 2005 – just weeks after she spent two days with him.

## Madam

The porn star said that the actor, who first met her in 1998 through a notorious madam, tracked her down via her Web site, where she hawked steamy pictures and videos.

Chloe said that Sheen contacted an escort agency and paid $15,000 for sex with her over two days in early 2005 – while he was still married to Richards!

On the night she arrived from Houston, Chloe was whisked by limo to the ultra-exclusive Hotel Bel-Air. The following night, the actor visited her unannounced at her Hollywood hotel, The Argyle.

She said Sheen complained about his wife's controlling ways and even asked her to marry him.

Three months after telling her story, Chloe was found dead in her Houston townhouse.

The coroner ruled her death was caused by an accidental overdose of prescription drugs.

Sheen denies any involvement with the porn star or her death.

But, talking at her home in Beaumont, Texas, Chloe's 51-year-old mom told a reporter, "I've seen a lawyer about filing a wrongful-death suit against Mr. Sheen. I think he didn't slip her the pills – but he drove her to it with death threats."

Donna Jones claims Sheen threatened Chloe after she spilled the beans about him cheating on his wife with her.

"He even said he'd get someone to slip poison in her favorite drink – Coca-Cola," claims Donna. "Toward the end, she was so paranoid Charlie was out to get her, she wouldn't sip the soda.

### 'Terrified'

"She'd call me 10 times a day telling me of her fears. She was terrified to death of the guy. She said Charlie was calling her saying, 'Bitch, you better keep your mouth shut!' He yelled, 'You're a liar.'

"I talked to her for four hours, 'til 2 a.m. the night she died. She was found dead at 5:30 in the morning.

> 'I've seen a lawyer about filing a wrongful death suit against Mr. Sheen'

"She told me that Charlie was still threatening her, afraid she'd go public again and tell more about their relationship.

"To me, her death was suspicious. I have called homicide detectives in Houston, but I don't think they are taking me seriously.

"But I think Denise should. If I were her, I'd run a mile from this guy.

"I think he's menacing, frightening and dangerous."

Donna knows her daughter was into drugs and had serious health problems. "She had an operation to have her appendix removed, then surgery to straighten out her digestive tract that had been causing her intense pain.

"She had been down to 85 pounds. But when she died she was optimistic. She had a boyfriend and her weight was up to 108. She had everything to live for.

"But instead, she was living in fear."

### 'Blow the lid off'

Donna says she's now writing a book about her daughter's life. "It'll blow the lid off Charlie Sheen's part in it," she vows.

Meanwhile, in blockbuster court papers filed April 24, Sheen's estranged wife charges that he's hooked on prescription pills and gay porn, gambles heavily, is so paranoid he keeps guns under the coffee table and his temper is so volatile that she locked him out of the house – and he threatened to have her killed.

"I must stop him from the cycle of abuse toward me and our children and his continued threats of violence and statements that he is going to kill me," Richards says in the documents.

Although Sheen denies all her allegations, the court granted a temporary restraining order against him.

– ALAN SMITH
newstips@globefl.com

> "When I asked him if he had anything to do with (it), he said no comment. This scared me!"
> – DENISE RICHARDS

*Charlie Sheen's estranged wife Denise Richards (circle). At left, porn star Chloe Jones*

*Charlie went to visit Chloe at the Argyle Hotel in Hollywood*

8 May 15, 2006 / GLOBE

May 15, 2006 / GLOBE